UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SPRING PIATEK, individually and as
next friend of Lily Piatek and
Theodore Piatek, and as administrator
of the Estate of Timothy Piatek,

        Plaintiff,

    v.

NORAZZA, INC.,

        Defendant.

No. 24 CV 4122

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Defendant Norazza, Inc., manufactures computer duster products. Timothy Piatek became addicted to inhaling Norazza's computer dusters in late 2021 or early 2022. His behavior became erratic, he was diagnosed with a disease causing his bones to grow abnormally and weaken, and he eventually died in May 2022, allegedly from inhaling Norazza-brand computer dusters. Plaintiff, Piatek's wife, brings claims for strict and negligent products liability, breach of express and implied warranties, survivorship, and wrongful death against Norazza.

Norazza moves to dismiss the complaint for failure to state a claim upon which relief can be granted and to strike the class action allegations in the complaint. For the reasons discussed below, the motion to dismiss for failure to state a claim is granted in part and denied in part. The motion to strike the class allegations is denied.

## I.     Legal Standards

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

The court must determine at "an early practicable time … whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). A motion to strike class allegations is evaluated under Rule 23. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014); *cf. Mussat v. IQVIA, Inc.*, 953 F.3d 441, 444 (7th Cir. 2020) (quoting *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017)) (an order striking a class allegation is "functionally equivalent to an order denying class certification" and is appealable under Rule 23(f)). A court may deny class certification before the plaintiff files a motion requesting certification. *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). But "the general rule [is] that motions to strike are disfavored." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). With this procedural posture, the burden lies with the defendant to definitively establish that a class action cannot be maintained. *Dowding v. Nationwide Mut. Ins.*

2

*Co.*, 490 F.Supp.3d 1291, 1298 (N.D. Ill. 2020). At the pleading stage, the court should address class allegations only where the pleadings are "facially defective or inherently deficient." *Id.* (citing *Kasalo*, 656 F.3d at 563).

## II.  Facts

Norazza manufactures computer duster products made up almost entirely of a compound called 1-1, Difluoroethane, or DFE, an odorless gas. [1] ¶¶ 9, 12, 89.[1] DFE is used as an inhalant by some, as it "causes intense and immediate intoxication." [1] ¶ 9. Inhalants are highly addictive substances and can cause neurological damage that leads to cognitive abnormalities and permanent brain damage, and can also cause damage to the heart, lungs, liver, and kidneys. [1] ¶¶ 2–3. The use of computer dusters as inhalants has increased significantly since the early 2000s. [1] ¶¶ 45, 48–49.

Inhaling DFE has been shown to cause death from cardiac arrest by causing cardiac arrhythmia, increasing the heart's sensitivity to the hormone adrenaline, and by Sudden Sniffing Death Syndrome, which occurs when the gas component of aerosol blocks the body's normal flow of oxygen. [1] ¶¶ 6–7, 76. DFE inhalation can also cause skeletal and bone deformities; bone fractures from falls; car crashes; chemical burns, blisters, and rashes; dysrhythmia (erratic heart beat); toxic myopericarditis (inflammation of heart muscle); ventricular fibrillation, tachycardia, and other heart dysfunction; acute kidney injury and failure; pneumomediastinum (air in the space

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's complaint, [1].

between the lungs); difficulty breathing; seizures; loss of motor control; and psychosis. [1] ¶ 76.

Norazza's products contain a trace amount—about .01%—of denatonium benzoate, a bitterant added to, according to Norazza, help deter inhalant abuse. [1] ¶¶ 17, 94–95. On each duster can, Norazza has added a label that says: "SAFETY BITTERANT ADDED to help discourage inhalant abuse." [1] ¶¶ 23, 95.



Denatonium benzoate is an alcohol denaturant used in many products to purportedly prevent children from accidentally ingesting the products. [1] ¶ 105. It is described as "the most bitter substance in the world." [1] ¶ 106. It's also a bronchodilator, which means it relaxes the bronchial airway tone, and "may impact the way DFE behaves in the body," increasing risk for those with asthma or other bronchoconstrictive diseases. [1] ¶ 121.

The bitterant has a "modest effect" on deterring ingestions. [1] ¶ 107. In a study of thirty children who drank orange juice with ten parts per million of denatonium benzoate, almost a quarter of them continued to drink after the initial exposure to the bitterant. [1] ¶ 107. The amount of bitterant in the study was more than twenty-five times the concentration of bitterant in Norazza's computer dusters.

4

[1] ¶ 107. There is also no evidence that a vapor spray from the bitterant and a solvent is as unpleasant as a liquid bitterant. [1] ¶ 116.

Plaintiff alleges that Norazza's use of a bitterant fails to take into account intentional ingestion and how adults who are intentionally inhaling computer dusters are different from children who accidentally ingest products. [1] ¶ 113–15. A person seeking a "reward"—i.e., getting high—may not be deterred from ingesting an inhalant with a low concentration of bitterant. [1] ¶ 115. Between fifteen and thirty percent of the adult population may be unable to detect denatonium benzoate at all. [1] ¶ 120.

Despite Norazza's addition of a bitterant to their products, rates of inhaling dusters continue to rise. [1] ¶ 103. A study in the Journal of American Toxicology notes that while a bitterant may be added to deter inhalant abuse, "it is unknown whether this reduces the prevalence or not." [1] ¶ 119 (citing Chris Vance, et al., *Deaths Involving 1,1-Difluoroethane at the San Diego County Medical Examiner's Office*, 39 J. Analytic Toxicology 626, 626-633 (Nov./Dec. 2012)).

Tests of three twelve-ounce cans of Endust, a Norazza-brand computer duster, showed that there was no denatonium benzoate in the gas phase in any of the cans, but the total amount of bitterant in the can was 62.869 parts per million. [1] ¶ 126.[2]

Timothy Piatek became addicted to Norazza's computer duster products in late 2021 or early 2022. [1] ¶¶ 34, 36. His behavior became erratic, and he developed

---

[2] It is not clear what phase the bitterant that was measured in the cans was in or whether it is detectable when the product is used.

Paget's Disease, a chronic condition that causes bones to grow abnormally and then weaken. [1] ¶¶ 37–38. Researchers have linked DFE inhalation to skeletal disorders. [1] ¶ 38. In May 2022, Piatek was found dead in his mother's home. [1] ¶ 39. He was found with a can of Endust between his legs, and additional Endust cans in his car. [1] ¶ 40. His autopsy listed his cause of death as "1,1-difluoroethane toxicity." [1] ¶ 40. Norazza was the manufacturer of the can of Endust that plaintiff alleges killed Piatek. [1] ¶ 90.

## III.  Analysis

### A.  Motion to Dismiss for Failure to State a Claim

#### 1.  *In pari delicto*

Norazza contends that the doctrine of *in pari delicto* and related defenses bar all of plaintiff's claims. Norazza makes two separate but related arguments: (1) that *in pari delicto* applies as a matter of law and bars recovery because Piatek committed a crime; and (2) that related defenses similarly bar recovery of Piatek's claims because he acted in violation of Illinois criminal law.

*In pari delicto* "embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Potek v. City of Chicago*, 2022 IL App (1st) 211286, ¶ 60 (1st Dist. 2022) (quoting *Nicholson v. Shapiro & Assocs., LLC*, 2017 IL App (1st) 162551, ¶ 10 (1st Dist. 2017)). The phrase means "equally at fault." *Nicholson*, 2017 IL App (1st) 162551, at ¶ 10. Under this doctrine, the law will not "aid either party to an illegal act, so long as they are of *equal* knowledge, willfulness, and wrongful intent." *Potek*, 2022 IL App (1st) 211286, at ¶ 64

(emphasis added); *see also Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 596 (7th Cir. 2012) (*in pari delicto* is "the idea that, when the plaintiff is as culpable as the defendant, if not more so, the law will let the losses rest where they fell."). The defense is "intended for situations in which the victim is a participant in the misconduct giving rise to his claim." *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 574 (7th Cir. 2004). The general rule barring recovery under *in pari delicto* is also subject to exceptions, including those arising from necessity, "unyielding principles of public policy," and "the different conditions of the parties." *Vine St. Clinic v. HealthLink, Inc.*, 222 Ill.2d 276, 299 (2006) (quoting *Evans v. Funk*, 151 Ill. 650, 658 (1894)).

The defense of *in pari delicto* requires that Piatek was equally at fault with Norazza. *See Williams Elecs. Games*, 366 F.3d at 573. Criminal conduct does not per se bar recovery under *in pari delicto* if Norazza was more at fault than Piatek. *See Potek*, 2022 IL App (1st) 211286, at ¶ 64. Because the complaint alleges that Norazza was more at fault than Piatek, and because Norazza disclaims any fault at all, the defense does not apply at this stage of the case; the complaint does not allege equal culpability. This is not a lawsuit between accomplices. And even if the defense could apply, there are factual questions regarding whether it should be applied as a matter of public policy. *See* [25] at 23–24; *Vine St.*, 222 Ill.2d at 299.

More generally, Illinois courts "will not assist a person who has participated in a transaction forbidden by statute to claim damages growing out of such transaction or relieve himself of the consequences of his illegal act." *Reed v. Witvoet*, 311

Ill.App.3d 735, 739 (3rd Dist. 2000) (quoting *Newton v. Ill. Oil Co.*, 316 Ill. 416, 422 (1925)). This defense, related to *in pari delicto*, Norazza argues, is part of a "broader Illinois policy that prevents any wrongdoer from recovering damages based upon a crime or other wrongdoing that they commit." [19] at 8.

It is a misdemeanor to "ingest, breathe, inhale or drink any compound, liquid, or chemical containing [certain substances] *or any other substance* for the purpose of inducing a condition of intoxication, stupefaction, depression, giddiness, paralysis or irrational behavior, or in any manner changing, distorting or disturbing the auditory, visual or mental processes." 720 ILCS 690/1 (emphasis added), 690/4 (categorizing a first violation of the statute as a Class C misdemeanor). Plaintiff argues that DFE is not one of the "expressly prohibited substances." [25] at 22. But DFE does not need to be; the statute also extends to "any other substance" used for the purposes listed. A "substance" is "matter of particular or definite chemical constitution." *People v. Hasselbring*, 2014 IL App (4th) 131128, ¶ 55 (4th Dist. 2014) (quoting Merriam–Webster Online Dictionary, available at http://www.merriam-webster.com/dictionary/substance). Plaintiff's complaint itself alleges that DFE is a substance. *See* [1] ¶¶ 3, 9, 93, 155–56.

A second statute makes it "unlawful for any person knowingly to possess a controlled or counterfeit substance or controlled substance analog." 720 ILCS 570/402. A "controlled substance analog" is "a substance, other than a controlled substance, which is not approved by the United States Food and Drug Administration or, if approved, is not dispensed or possessed in accordance with State or federal law,

that has a chemical structure substantially similar to that of a controlled substance in Schedule I or II, or that was specifically designed to produce an effect substantially similar to that of a controlled substance in Schedule I or II." *Id.*

The complaint does not allege that Piatek committed either crime cited by Norazza. The complaint does not allege that Piatek inhaled DFE for the *purpose* of inducing any one of the listed conditions, an element of 720 ILCS 690/1. The complaint alleges that Piatek began inhaling and became addicted to Norazza's duster products after being introduced to the "immediate and intense intoxication from huffing DFE." [1] ¶¶ 34, 36. Although the complaint says Piatek experienced this intoxicating effect, it does not allege that he inhaled computer dusters to induce the effect. And while the complaint also alleges that inhalants are "highly accessible as a means to get intoxicated" and that "DFE causes intense and immediate intoxication" and is highly addictive, [1] ¶¶ 3–4, 9, 16, 72, 79, it does not say that Piatek's purpose at the time of his injury-causing inhalation was to induce any specific condition. For now, Piatek's purpose is an inference that should not be drawn in Norazza's favor.

The complaint does not establish that DFE is a controlled substance in Schedule I or II. Nor is there anything that shows that DFE is an analog of a Schedule I or II drug—there is no allegation that its chemical structure is substantially similar to that of a controlled substance or that it was specifically designed to produce an effect substantially like that of any specific controlled substance. Because the complaint does not allege that DFE is a controlled substance or controlled substance

analog, an element of 720 ILCS 570/402, it does not establish that Piatek violated the statute. Because the complaint does not allege the facts necessary to show that Piatek committed all elements of either crime that Norazza cites, Norazza's motion to dismiss all claims based on these defenses is denied.

Finally, though the violation of a criminal statute may preclude Piatek himself from recovery, the doctrines of *in pari delicto* or preventing wrongdoers from recovering damages would *not* bar recovery for a wrongful death action brought by the decedent's wife and children. *Reed*, 311 Ill.App.3d at 740–41.

### 2.   *Statute of Limitations*

Norazza argues that the statute of limitations bars plaintiff's personal injury claims. Product liability actions have a two-year statute of limitations that begins to run from "the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury." 735 ILCS 5/13-213(d). Illinois applies the "discovery rule," under which the statute of limitations clock does not start to run "until the injured party knows or reasonably should have known both that she was injured and that her injury was wrongfully caused by another person." *Stark v. Johnson & Johnson*, 10 F.4th 823, 828 (7th Cir. 2021). "Wrongfully caused" means "when the injured party learns that [his] injury may stem from another's negligence rather than natural causes." *Id.* at 829. Whether the injured party knew or reasonably should have known his injury was caused by defendant's conduct is generally a question of fact reserved for the jury. *See id.*

Piatek began inhaling computer dusters in late 2021 or early 2022. [1] ¶ 34. He died on May 25, 2022. [1] ¶ 39. This action was filed on May 20, 2024. [1]. According to the complaint, between the time Piatek began inhaling computer dusters and his death, he experienced changes in his behavior, addiction, and abnormal bone lesions leading to a diagnosis of Paget's Disease. [1] ¶¶ 36–39. But there is nothing in the complaint that alleges that Piatek knew or should have known the changes in his health were attributable to the computer dusters before May 20, 2022. At this stage, the statute of limitations does not bar plaintiff's claims. *See Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019) ("[A] motion to dismiss based on a failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.").

### 3. *Failure to state a strict liability manufacturing defect claim*

Norazza also argues that plaintiff failed to plead a viable manufacturing defect claim. It reads plaintiff's complaint to allege that Norazza's products "do not contain the amount of bitterant called for in the patented design," which alleges a design defect, not a manufacturing defect. [19] at 13–14.

A "manufacturing defect occurs when one unit in a product line is defective, whereas a design defect occurs when the specific unit conforms to the intended design but the intended design itself renders the product unreasonably dangerous." *Bensenberg v. FCA US LLC*, 31 F.4th 529, 535 (7th Cir. 2022) (quoting *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill.App.3d 490, 497 (1st Dist. 2010)).

11

Plaintiff's complaint alleges that Norazza manufactured its products in a way that led to the levels of bitterant in each computer duster "vary[ing] significantly." [1] ¶ 207. It also alleges that the level of bitterants were a "deviation from Defendant's design specifications." [1] ¶ 208. Plaintiff's allegations are that certain Norazza computer dusters were defective because they did not contain the amount of bitterant called for in the patented design of the product. This is sufficient to allege a manufacturing defect—the product is defective because it does not conform to the intended design. *Bensenberg*, 31 F.4th at 535.

To the extent that plaintiff's design defect and manufacturing defect claims are incompatible, plaintiff acknowledges that these claims are pled in the alternative. [25] at 25–26; Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 560 (7th Cir. 2010).

4. *Duty*

Norazza argues that it does not have a duty to prevent the use of its products to commit crimes. [19] at 14–15. The complaint alleges that Norazza had a duty of reasonable care in designing its computer dusters. [1] ¶ 221.

A product liability claim based on negligence is "based upon fundamental concepts of common law negligence." *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 82 (2011). To state a cause of action for negligence, plaintiff must allege facts that establish (1) existence of a duty; (2) breach of that duty; (3) injury proximately caused by the breach; and (4) damages. *Id.*; *Johnson v. Edward Orton, Jr. Ceramic Found.*,

12

71 F.4th 601, 609 (7th Cir. 2023). Whether there is a duty is a question of law. *Jablonski,* 2011 IL 11096, at ¶ 83. "A manufacturer has a nondelegable duty to design a reasonably safe product." *Id.* Plaintiff adequately pled that Norazza owed a duty to Piatek: "As a manufacturer, Defendant had a duty to exercise reasonable care in the design of the computer dusters at issue in this case." [1] ¶ 221. Plaintiff identified Norazza as a manufacturer, and alleged that as a manufacturer, Norazza had a duty in designing its products. This is sufficient at this stage to plead duty in support of a claim for negligent design defect. *Jablonski*, 2011 IL 11096, at ¶ 83.

Norazza says that because Piatek used the computer dusters to commit crimes, Norazza did not owe him a duty. But because the complaint does not allege that Piatek committed a crime, Norazza's cases in support are not dispositive at this time.

### 5.   *Negligent Failure to Warn*

A manufacturer has a "duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." *Johnson*, 71 F.4th at 610 (quoting *Sollami v. Eaton*, 201 Ill.2d 1, 7 (2002)). To adequately plead negligent failure to warn, plaintiff must allege that Norazza "knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity." *Blue v. Env't Eng'g, Inc.*, 215 Ill.2d 78, 96 (2005). A plaintiff must demonstrate either that the manufacturer failed to warn of a defect in or dangerous propensity of a product, or failed to instruct on the proper use of the

product. *Hakim v. Safariland, LLC*, 79 F.4th 861, 868–69 (7th Cir. 2023); *Salerno*, 402 Ill.App.3d at 499.

Providing an inadequate warning is "no better than providing no warning whatsoever." *Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1318 n.12 (7th Cir. 1983). A product warning may be inadequate if it does not "specify the risk presented by the product," it is "inconsistent with how the product would be used," it fails to "provide the reason for the warning," or it fails to "reach foreseeable users." *Hakim*, 79 F.4th at 869 (quoting *Palmer v. Avco Distrib. Corp.*, 82 Ill.2d 211, 221–22 (1980)). A manufacturer does not need to warn about every possible consequence of failing to follow a "primary" warning. *Kelso v. Bayer Corp.*, 398 F.3d 640, 642 (7th Cir. 2005). The adequacy of the warnings is typically a question for the jury. *Hakim*, 79 F.4th at 868. "The sufficiency of the warning can become a question of law where the warning is clear, accurate and unambiguous." *Hernandez v. Schering Corp.*, 2011 IL App (1st) 093306, ¶ 40 (1st Dist. 2011).

At the time Piatek inhaled the dusters, the warning label read: "MISUSE BY DELIBERATELY CONCENTRATING AND INHALING CONTENTS MAY BE HARMFUL OR FATAL." [19-1]; [19] at 17.[3] It also stated: "For more information on

---

[3] According to Norazza's president, the label attached to Norazza's motion to dismiss was a true and accurate photograph of the product labeling on Endust dusters from January 1, 2021, continuing through May 25, 2022. [26-2] ¶ 5. The court may consider any "documents incorporated into the complaint by reference" under Rule 12(b)(6). *Smykla v. Molinaroli*, 85 F.4th 1228, 1234 (7th Cir. 2023) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Plaintiff's negligent failure-to-warn claim is based on the alleged lack of warning on Norazza's computer dusters. *See* [1] ¶¶ 241–69. Plaintiff also attaches, as part of the complaint, the label that says a bitterant has been added, but not the other warning labels on the Endust cannisters. [1] ¶ 23. The warning labels are incorporated into the complaint by reference and I consider them.

inhalant abuse, please visit www.inhalant.org. Contains a bitterant to help discourage inhalant abuse." [19-1]; [19] at 17. It contains a second cautionary label: "CAUTION: KEEP OUT OF REACH OF CHILDREN. THE INTENTIONAL MISUSE BY DELIBERATELY INHALING CONTENTS MAY BE FATAL." [19-1]; [19] at 17. There are also directions to use the product with adequate ventilation. [19-1]. The label contains a first aid warning for what to do if the user inhales the product and says to call 911 or a physician if there is a medical emergency. [19-1].

 

Norazza says this label is adequate to warn of the dangers of inhaling computer dusters. Plaintiff responds that the label presented by Norazza is insufficient because the language is "small and inconspicuous, illegible, and does not describe what harmful effects may result from Endust misuse." [25] at 32. She says that the warnings are too vague to give actual warning and do not mention "the profound risk of brain damage, cardiac arrest, sudden suffocating death, skeletal fluorosis, psychosis, organ damage, involuntary passing of urine and feces, addiction or death," or any other serious risk of the product. [25] at 32. She also says that there is no

mention of the increased danger in inhaling by the addition of the bitterant. [25] at 32.

Norazza's motion to dismiss is granted. There are two separate warnings, bolded and in all capital letters, on the label cautioning that deliberately inhaling the product could be fatal. One of those warnings also states that inhaling could be harmful. The warnings say that intentionally inhaling is a "misuse" of the product. The warnings also give a link to a website to learn more about inhalant abuse. The warnings are clear, accurate, and unambiguous. *Hernandez*, 2011 IL App (1st) 093306, at ¶ 40. Norazza did not need to explain the different types of ways death or harm could occur. *See Kelso*, 398 F.3d at 642. Indeed, "[e]xtended warnings present several difficulties, first among them that, the more text must be squeezed onto the product, the smaller the type, and the less likely is the consumer to read or remember any of it. Only pithy and bold warnings can be effective." *Todd v. Societe BIC, S.A.*, 9 F.3d 1216, 1218–19 (7th Cir. 1993). The primary warning was clear: inhaling the duster is a misuse of the product that can be harmful or fatal. Plaintiff has failed as a matter of law to state a claim for failure-to-warn. Any amendment would be futile, because no matter what facts the plaintiffs allege, the label warns against death and harm from inhaling computer dusters. *See Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). The claim is dismissed with prejudice.

### 6. *Breach of implied warranty*

An implied warranty of merchantability of goods is "implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-

16

314(1). A breach of implied warranty claim requires the plaintiff to plead: (1) a sale of goods; (2) by a merchant of those goods; and (3) the goods were not of merchantable quality. *Brandt v. Bos. Sci. Corp.*, 204 Ill.2d 640, 645 (2003). One way to show the goods were not of merchantable quality is to show the goods were not "fit for the ordinary purposes for which such goods are used." 810 ILCS 5/2-314(2)(c). The complaint must allege what the ordinary purpose of the good is. *See Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F.Supp.3d 718, 726 (N.D. Ill. 2021). It must also allege in what way the product was unfit for its ordinary purpose. *Baldwin v. Star Sci., Inc.*, 78 F.Supp.3d 724, 741 (N.D. Ill. 2015). Ordinary purposes for which goods are used "are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." 810 ILCS 5/2-315, cmt. 2 ("For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains."). "'Merchantability … does not look only at the particular use to which the buyer puts the goods.' Rather, '[i]t is … appropriate to analyze the transaction from the selling merchant's perspective.'" *Comark Merch., Inc. v. Highland Grp., Inc.*, 932 F.2d 1196, 1204 (7th Cir. 1991) (quoting *Bethlehem Steel Corp. v. Chi. E. Corp.*, 863 F.2d 508, 513 (7th Cir. 1988)). Whether a use falls within a product's "ordinary purpose" requires factual allegations in support. *Compare Bakopolous v. Mars Petcare US, Inc.*, 592 F.Supp.3d 759, 767 (N.D. Ill. 2024) (plaintiffs sufficiently alleged that an ordinary purpose of the dog food was to enable pet owners to control what their dogs ate and Mars "advertised its products to encourage that usage") *with*

*Solvay USA*, 521 F.Supp.3d at 726 (plaintiffs failed to allege facts showing what the ordinary purpose of the goods—atmospheric tanks—was).

Norazza argues that plaintiff cannot establish that the computer dusters were "unfit for the ordinary purposes for which goods are used." [19] at 18; 810 ILCS 5/2-314(2)(c). The complaint alleges that the product is "unsuitable and unsafe for personal or household use" because of its "inherent defects." [1] ¶ 283. In her complaint, plaintiff does not specify what exactly "personal or household use" entails, or how the "inherent defects" in the computer dusters made the dusters "unsuitable and unsafe for personal or household use." But in her response to Norazza's motion to dismiss, plaintiff argues that "intentional inhalation" is "one of the purposes 'for which such goods are used.'" [25] at 33.[4]

Though plaintiff alleges that the inhalation of Norazza's products is foreseeable, she does not allege facts to show that it is an ordinary use of the product. Inhaling computer dusters may be how some consumers use the product, but Norazza seeks to discourage that use. Unlike in *Bakopolous*, where the defendant promoted the use of its product to enable control over what a dog eats, here, Norazza does the opposite. Looking at the "transaction from the selling merchant's perspective," plaintiff fails to allege facts that show that from Norazza's perspective, inhaling its product is an "ordinary purpose" for which the duster is used. *Comark Merch.*, 932

---

[4] Plaintiff "may point to facts in a brief or affidavit 'in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle [her] to judgment." *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 641 (7th Cir. 2024) (quoting *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016)).

F.2d at 1204. Because the complaint fails to allege that the inhalation of the computer dusters is an "ordinary purpose" of the good, Norazza's motion to dismiss the breach of implied warranty of merchantability claim is granted. This dismissal is without prejudice to amendment. *White v. Ill. State Police*, 15 F.4th 801, 808 (7th Cir. 2021) ("Dismissal without prejudice is the norm, at least when it comes to the plaintiff's original complaint.").

### 7. *Breach of express warranty*

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313(1)(a); *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors AM., Inc.*, 372 Ill.App.3d 354, 360 (1st Dist. 2007). To plead a breach of express warranty, the plaintiff must allege that defendant: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F.Supp.3d 705, 714 (N.D. Ill. 2020); *Redmac, Inc. v. Computerland of Peoria*, 140 Ill.App.3d 741, 743 (3d Dist. 1986). "If the goods fail to conform to the affirmations or promises, the seller may be held accountable for breach of warranty." *Weng v. Allison*, 287 Ill.App.3d 535, 537 (3d Dist. 1997).

Generally, a buyer must notify the seller of a breach of any express warranty within a reasonable period of time. 810 ILCS 5/2-607(3)(a); *Andrews v. Carbon on 26th, LLC*, 2024 IL App (1st) 231369, ¶ 38 (1st Dist. 2024). "[A] consumer plaintiff

who suffers a personal injury may satisfy the section 2-607 notice requirement by filing a complaint stating a breach of warranty action against the seller." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 495 (1996).

Plaintiff brought a suit based on Piatek's alleged personal injury from Norazza's products. She was able to satisfy the section 2-607 requirement when she filed her complaint stating that Norazza breached an express warranty. The claim will not be dismissed for failure to give notice.

The complaint alleges that Norazza "made express affirmations of fact in its warning placed on cans of [its computer dusters], warranting that the dusters contained a bitterant which was safe and deters inhalant abuse." [1] ¶ 287. It alleges that this qualifies as an express warranty. The complaint then alleges that the bitterant was not added at a concentration that would be an effective deterrent to inhalant abuse, that the bitterant was ineffective as a deterrent because a large portion of the population could not taste it, and because the bitterant made the dusters more unsafe. [1] ¶ 289. The complaint also alleges that Norazza's "products did not conform to the express warranties made as to product safety." [1] ¶ 291.

Norazza says that there was no breach of the warranty because a bitterant *was* added to help discourage inhalant abuse. [19] at 19. Plaintiff responds that Norazza added the bitterant at the demand of retailers and knew the bitterant was ineffective at deterring inhalant abuse, and in fact made the product more dangerous. [25] at 33. That the bitterant was added at the demand of retailers does not mean that it was not also added to help deter abuse. The warranty also does not say that the bitterant

20

made the product safe, so Norazza could not breach a warranty by adding a bitterant that may have made the product more dangerous. But if Norazza added a bitterant it knew would not help to discourage inhalant abuse, it breached the warranty that it had added a bitterant for the purpose of discouraging abuse. Taking all facts and inferences in plaintiff's favor, the complaint adequately alleges that Norazza breached the warranty on the can that it added a safety bitterant to help discourage inhalant abuse.

### 8.  *Derivative claims*

Norazza moves to dismiss plaintiff's wrongful death, survivorship, and punitive damages claims as derivative. However, because some of plaintiff's claims survive the motion to dismiss, so too do her derivative claims. *See Kessinger v. Grefco, Inc.*, 251 Ill.App.3d 980, 986–87 (4th Dist. 1993) (collecting cases).

### 9.  *Punitive damages*

Norazza argues that plaintiff's claim for punitive damages must be dismissed because the complaint violates Illinois law by improperly pleading a claim for punitive damages. [19] at 20. Illinois law states that "[i]n all actions on account of bodily injury or physical damage to property, based on negligence ... where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages." 735 ILCS 5/2-604.1.

In this court, federal procedural rules apply. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (A "federal court sitting in diversity applies federal pleading requirements even when the claim

pleaded arises under state rather than federal law." (internal quotations omitted)). 735 ILCS 5/2-604.1 is an Illinois procedural law governing pleading; it does not apply in federal court. *Prokop v. Hileman*, 588 F.Supp.3d 825, 840 (N.D. Ill. 2022). Norazza's motion to dismiss plaintiff's claims for punitive damages is denied.

### B. Motion to Strike Class Action Allegations

To certify a class under Federal Rule of Civil Procedure 23, the plaintiff must first meet four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The class itself must also be ascertainable, that is, the class must be defined clearly and by objective criteria, rather than, for example, a class member's state of mind. *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 657 (7th Cir. 2015). A class may fail if it is too vague or subjective or if the class was defined in terms of success on the merits (i.e., a "fail-safe" class). *Id.*

If the plaintiff fulfills these requirements, she then "can proceed along one of several paths," one of which is certification of a specific issue under Rule 23(c)(4). *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 896 (7th Cir. 2024). This is the path plaintiff plans to take. She says she seeks to certify at least twelve different questions she alleges are common to the entire class. [24] at 14–15.

The common questions for each issue must "predominate in the resolution of the specific issue or issues that are the subject of the certification motion and not as to the cause of action, taken as a whole." *Jacks*, 118 F.4th at 897. Along with predominance, a party seeking certification under Rule 23(c)(4) "must show that

certifying the proposed issues would be the most practical and efficient way to resolve the litigation"—the superiority requirement. *Id.* at 898; Fed. R. Civ. P. 23(b)(3).

Norazza argues that mass-tort product liability actions are not amenable to class certification, and that plaintiff's class fails to establish typicality, commonality, adequacy, predominance, superiority, and ascertainability.

The motion to strike is premature. Norazza has a heavy burden to show that the "pleadings make clear that the suit cannot satisfy Rule 23." *Hill v. Wells Fargo Bank, N.A.*, 946 F.Supp.2d 817, 830 (N.D. Ill. 2013). At this early stage of the proceedings, I cannot say that no class could be certified under Rule 23. But there are challenges Piatek faces in proving that a class should be certified.

First, there likely will be issues of predominance. *See Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 526, 531–32 (N.D. Ill. 1998). Statutes of limitations defenses may create individual issues—if they are raised, the court will need to determine when every class member's injury or addiction became "reasonably ascertainable." *See Jamie S. v. Milwaukee Public Schs.*, 668 F.3d 481, 495–96 (7th Cir. 2006) (certified class failed because "there is no way to know or readily ascertain who is a member of the class"). The individual inquiries could predominate the common questions to each issue the plaintiff presents.

There are likely also issues of superiority. *See Dhamer*, 183 F.R.D. at 526; *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 373 (N.D. Ill. 1998). Piatek's proposed class includes people who suffer from addiction "arising from inhaling computer duster manufactured by Norazza, Inc." [1] ¶ 136. But "addiction is not a

simple concept." *Dhamer*, 183 F.R.D. at 531; *Fisher*, 181 F.R.D. at 370. It requires a factfinder to examine biological and psychological evidence, substantial information about each plaintiff's medical history, emotional condition, and lifestyle, and the significance of each of those things. *Dhamer*, 183 F.R.D. at 531; *Fisher*, 181 F.R.D. 370. It is "an individual inquiry not appropriate for class treatment." *Dhamer*, 183 F.R.D. at 531. As the complaint itself lays out, there are ten factors the Diagnostic and Statistical Manual of Mental Disorders uses to diagnose a person with an inhalant use disorder. [1] ¶ 70. Similarly, there are questions of how long each plaintiff would have been inhaling computer dusters, whether they used multiple brands—and if so, how much of their injury was caused by Norazza's products compared with the other brands, when each plaintiff's injuries or addiction began, when they were diagnosed, whether a plaintiff consulted with a doctor and whether the doctor knew of the inhalant use when diagnosing any medical problem. Each prospective class member likely would need to be involved in "extensive individualized proceedings regardless of" what issues are certified for the class. *Fisher*, 181 F.R.D. at 373. Because of the number and depth of individualized issues, "little efficiency is gained" by singling out a few issues for class treatment. *Id.*

Piatek's claims—for personal injury and death—also hedge toward individual suits: because each plaintiff has a "significant interest in individually controlling the prosecution of [his case]; each ha[s] a substantial stake in making individual decisions on whether and when to settle." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616 (1997) (alterations in original) (internal quotations omitted).

If plaintiff is to successfully move for class certification, she will need to address these issues, but it's too soon to know that she would never be able to meet her burden.

## IV. Conclusion

Norazza's motion to dismiss, [18], is granted in part and denied in part. Plaintiff's claim for failure to warn is dismissed with prejudice, and her claim for breach of implied warranty of merchantability is dismissed without prejudice. Norazza's motion to strike class allegations, [20], is denied.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: May 12, 2025

25