**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SPRING PIATEK, Individually and as Next Friend of Lily Piatek and Theodore Piatek, and as Administrator of the Estate of Timothy Piatek,<br><br>      Plaintiff,<br><br>   v.<br><br>NORAZZA, INC.,<br><br>      Defendant. | No. 24 CV 4122<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Defendant Norazza manufactures computer duster products. Timothy Piatek inhaled and became addicted to inhaling Norazza's computer dusters in late 2021 or early 2022. Piatek's behavior became erratic, he was diagnosed with a disease causing his bones to grow abnormally and weaken, and he eventually died in May 2022, allegedly from inhaling Norazza-brand computer dusters. After Norazza's first motion to dismiss was granted in part, plaintiff, Piatek's wife, filed an amended complaint.

Norazza moves to dismiss counts V and VIII of the amended complaint for negligent failure to warn and breach of implied warranty of merchantability. For the reasons discussed below, the motion to dismiss is granted in part and denied in part.

I.  **Legal Standards**

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

II. **Facts**

Norazza manufactures computer duster products made up almost entirely of a compound called 1-1, Difluoroethane, or DFE, an odorless gas. [41] ¶¶ 9, 12, 89.[1] DFE is used as an inhalant by some, as it "causes intense and immediate intoxication." [41] ¶ 9. Inhalants are highly addictive substances and can cause neurological damage that leads to cognitive abnormalities and permanent brain damage, and can also cause damage to the heart, lungs, liver, and kidneys. [41] ¶¶ 2–3. Norazza's products also contain a trace amount—about .01%—of denatonium benzoate, a bitterant added to, according to Norazza, help deter inhalant abuse. [41] ¶¶ 17, 94–

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's first amended complaint, [41].

95. On each duster can, Norazza has added a label that says: "SAFETY BITTERANT ADDED to help discourage inhalant abuse." [1] ¶¶ 23, 95.



Denatonium benzoate is an alcohol denaturant used in many products to purportedly prevent children from accidentally ingesting the products. [41] ¶ 105. It is described as "the most bitter substance in the world." [41] ¶ 106. It's also a bronchodilator, which means it relaxes the bronchial airway tone, and "may impact the way DFE behaves in the body," increasing risk for those with asthma or other bronchoconstrictive diseases. [41] ¶ 121.

The bitterant has a "modest effect" on deterring ingestions. [41] ¶ 107. In a study of thirty children who drank orange juice with ten parts per million of denatonium benzoate, almost a quarter of them continued to drink after the initial exposure to the bitterant. [41] ¶ 107. The amount of bitterant in the study was more than twenty-five times the concentration of bitterant in Norazza's computer dusters. [41] ¶ 107. There is also no evidence that a vapor spray from the bitterant and a solvent is as unpleasant as a liquid bitterant. [41] ¶ 116.

Plaintiff alleges that Norazza's use of a bitterant fails to account for intentional ingestion and how adults who are intentionally inhaling computer dusters are

3

different from children who accidentally ingest products. [41] ¶ 112–15. A person seeking a "reward"—i.e. getting high—may not be deterred from ingesting an inhalant with a low concentration of bitterant. [41] ¶ 115. And between fifteen and thirty percent of the adult population may be unable to detect denatonium benzoate at all. [41] ¶ 120. A study in the Journal of American Toxicology notes that while a bitterant may be added to deter inhalant abuse, "it is unknown whether this reduces the prevalence or not." [41] ¶ 119 (citing Chris Vance, et al., *Deaths Involving 1,1-Difluoroethane at the San Diego County Medical Examiner's Office*, 39 J. Analytic Toxicology 626, 626–33 (Nov./Dec. 2012)).

Tests of three twelve-ounce cans of Endust, a Norazza-brand computer duster, showed that there was no denatonium benzoate in the gas phase in any of the cans, but the total amount of bitterant in the can was 62.869 parts per million. [41] ¶¶ 124, 126.[2]

Timothy Piatek became addicted to Norazza's computer duster products in late 2021 or early 2022. [41] ¶¶ 34, 36. His behavior began to become erratic, he developed Paget's Disease, a chronic condition that causes bones to grow abnormally and then weaken, and in May 2022, was found dead in his mother's home. [41] ¶¶ 37–39. He was found with a can of Endust between his legs, and additional Endust cans in his car. [41] ¶ 40. His autopsy listed his cause of death as "1,1-difluoroethane toxicity."

---

[2] It is not clear what phase the bitterant that was measured in the cans was in or whether it is detectable when the product is used.

4

[41] ¶ 40. Norazza was the manufacturer of the can of Endust that plaintiff alleges killed Piatek. [41] ¶ 90.

**III.    Analysis**

    **A.    Negligent Failure to Warn**

I previously granted Norazza's motion to dismiss plaintiff's negligent failure to warn claim and dismissed the claim with prejudice. [35] at 13–16. Norazza argues that res judicata bars plaintiff from relitigating this claim. [43] at 4–5. Plaintiff does not contest that the claim was previously dismissed with prejudice and that my decision governs this claim. [49] at 17. She says she retained the claim from her original complaint to preserve it for appeal. [49] at 6.

Because plaintiff offers no new argument in support of Count V, it is dismissed with prejudice for the reasons stated in *Piatek v. Norazza, Inc.*, 785 F.Supp.3d 322, 334–36 (N.D. Ill. 2025).

    **B.    Breach of Implied Warranty**

A warranty that goods sold are merchantable is "implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1). A breach of implied warranty claim requires the plaintiff to plead: (1) a sale of goods; (2) by a merchant of those goods; and (3) the goods were not of merchantable quality. *Brandt v. Bos. Sci. Corp.*, 204 Ill.2d 640, 645 (2003). Goods not of merchantable quality are those not "fit for the ordinary purposes for which such goods are used" or those that do not "conform to the promises or affirmations of fact made on the container or label if any." 810 ILCS 5/2-314(2)(c), (f).

5

### 1. *Ordinary purpose*

Ordinary purposes for which goods are used "are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." 810 ILCS 5/2-315, cmt. 2 ("For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains."). "'Merchantability … does not look only at the particular use to which the buyer puts the goods.' Rather, '[i]t is … appropriate to analyze the transaction from the selling merchant's perspective.'" *Comark Merchandising, Inc. v. Highland Grp., Inc.*, 932 F.2d 1196, 1204 (7th Cir. 1991) (quoting *Bethlehem Steel Corp. v. Chi. E. Corp.*, 863 F.2d 508, 514 (7th Cir. 1988)). Whether a use falls within a product's "ordinary purpose" requires factual allegations in support. *Compare Bakopolous v. Mars Petcare US, Inc.*, 592 F.Supp.3d 759, 767 (N.D. Ill. 2024) (plaintiffs sufficiently alleged that an ordinary purpose of the dog food was to enable pet owners to control what their dogs ate and Mars "advertised its products to encourage that usage") *with Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F.Supp.3d 718, 726 (N.D. Ill. 2021) (plaintiffs failed to allege facts showing what the ordinary purpose of the goods—atmospheric tanks—was). Plaintiff must also allege in what way the product was unfit for its ordinary purpose. *Baldwin v. Star Sci., Inc.*, 78 F.Supp.3d 724, 741 (N.D. Ill. 2015).

Norazza argues that plaintiff has alleged that the component denatonium benzoate, not Norazza's computer duster products themselves, breached the implied warranty of merchantability. Plaintiff alleges that a "component of a product can also

6

breach the implied warranty of merchantability, when that component is unsafe or ineffective for that component's ordinary purpose, even if the overall product still functions." [41] ¶ 286. To that end, plaintiff alleges that the ordinary purpose of the bitterant denatonium benzoate is "to be an aversive agent to discourage inhalation or misuse of a computer duster product." [41] ¶ 287. Plaintiff alleges that when the warranty was "triggered, Endust … included a component—the bitterant—that was unfit for its ordinary purpose because it was ineffective." [41] ¶ 288. Plaintiff also alleges that "Endust, with its component DB, failed to function as intended for its ordinary purpose." [41] ¶ 292. Plaintiff argues that "goods" includes goods' component parts, and that when one component is defective, the sale of the good can breach the implied warranty of merchantability.

The statute requires the good to be "fit for the ordinary purposes for which such *goods* are used." 810 ILCS 5/2-314(2)(c) (emphasis added). Plaintiff has alleged that the ordinary purpose of denatonium benzoate is "to be an aversive agent to discourage inhalation or misuse of a computer duster product" and that the bitterant failed to adequately deter inhalation, and so it was unfit for its ordinary purpose. [41] ¶¶ 287–88. But plaintiff still fails to allege the ordinary purpose of the computer dusters— again alleging only that Norazza warranted that the dusters were "of merchantable quality and safe for personal or household use" and then asserting that Norazza impliedly warranted that the component denatonium benzoate was of merchantable quality and effective in deterring intentional inhalation. [41] ¶ 281. To the extent that plaintiff argues that a defective component not suited for the *component's* ordinary

7

purpose constitutes a breach of implied warranty, that is contrary to the statute. Rather, the defective component must make the *good* unfit for *its* ordinary purpose.

The cases plaintiff cites do not say otherwise. In *Dynamic Recycling Servs., Inc. v. Shred Pax Corp.*, 210 Ill.App.3d 602, 610–11 (2d Dist. 1991), for example, the defendants argued that the tire shredder's ordinary purpose was to shred tires, and the machine did so. But the court found that the evidence showed that the ordinary purpose was to shred a minimum of 250 tires an hour on a continuous basis—which the shredder in the case did not do. *Id.* at 611. Instead, it clogged up after only forty or fifty tires. *Id.* "There was abundant evidence that the shredder was supposed to be able to shred auto tires in far greater volume and for longer period of time than it was doing." *Id.* at 610. Although a component may have been the only defective part of the machine, its defect made the machine itself not suited to its ordinary purpose. *Id.* at 611.

For automobiles, "[f]itness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free from defects." *Shoop v. DaimlerChrysler Corp.*, 371 Ill.App.3d 1058, 1065 (1st Dist. 2007). As a matter of law, being fit for driving means the car is free from defects. A defective component is enough by itself to prove breach, even when the car was able to be driven. *Id.* at 1065–66. This does not mean that for any good, any possible defect in a component would

8

deem the good unfit for its ordinary purpose, and plaintiff cites no cases for that proposition.[3]

Because plaintiff again fails to allege the ordinary purpose of Norazza's computer dusters, she cannot state a claim for breach of implied warranty of merchantability based on fitness for the ordinary purpose for which computer dusters are used.

### 2. *Conforming to the promises or affirmations of fact made on the label*

Though plaintiff fails to state a claim for a breach of implied warranty of merchantability based on the ordinary purpose of the dusters, she has stated a claim for breach of implied warranty of merchantability based on the alleged failure to conform to the promises or affirmations of fact made on the container or label. 810 ILCS 5/2-314(2)(f). A breach of implied warranty claim may "proceed based on representations on product labels about the contents of the product." *In re Beyond Meat, Inc. Protein Content Mktg. & Sales Pracs. Lit.*, 718 F.Supp.3d 800, 821 (N.D. Ill. 2024) (collecting cases); *Wheeler v. Sunbelt Tool Co., Inc.*, 181 Ill.App.3d 1088, 1101 (4th Dist. 1989) ("A description of the product may create an implied warranty of merchantability."). If there is a valid claim for breach of an express warranty, that also supports a claim for a breach of an implied warranty based on the failure to conform to the promises on a label. *See Beyond Meat*, 718 F.Supp.3d at 821 (applying

---

[3] Plaintiff's third cited case, *Soft Water Serv., Inc. v. M. Suson Enters., Inc.*, 39 Ill.App.3d 1035 (1st Dist. 1976) does not discuss what the ordinary purpose of the good was and so does not address the issue here.

a single analysis to express and implied warranty claims based on defendant's product labels); *Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052, 1096 (N.D. Cal. 2017) (an "implied warranty of merchantability claim [based on conforming to a label] rises and falls with express warranty claims brought for the same product").

I have already found that plaintiff has alleged a claim for breach of express warranty. *Piatek*, 785 F.Supp.3d at 337–38; [35] at 19–21. Norazza's labels stated that a "safety bitterant was added to help discourage inhalant abuse." [41] ¶¶ 23–24. Plaintiff alleges that the bitterant was ineffective because Norazza knew that the quantity of denatonium benzoate added to the cans was insufficient, that denatonium benzoate was undetectable in its vapor phase, that Norazza did not add the amount required according to its patent, and that the addition of denatonium benzoate actually made its products more dangerous. [41] ¶¶ 289–90. As with the express warranty claim, the label does not claim that the bitterant made the product safe. [35] at 20–21. But if Norazza added a bitterant it knew would not help discourage inhalant abuse, then the dusters did not "conform to the … affirmations of fact made on the … label." 810 ILCS 5/2-314(2)(f); *see also* [35] at 21. Because plaintiff has alleged that the representations on the product label about the bitterant contents of the duster were untrue, and that Norazza knew so, she has adequately alleged a claim for breach of implied warranty under 810 ILCS 5/2-314(2)(f).

## IV.   Conclusion

Norazza's motion to dismiss, [42], is granted in part and denied in part. Plaintiff's claim for failure to warn is dismissed with prejudice. Her claim for breach of implied warranty of merchantability for being unfit for the good's ordinary purpose is dismissed with prejudice,[4] but her claim for failure to conform to the promises on the label remains.

ENTER:

                                          Manish S. Shah
                                          United States District Judge

Date: January 6, 2026

---

[4] After a party has amended its pleading once by right, it may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "Where a plaintiff repeatedly fails to cure deficiencies," I have "'broad discretion' to deny leave to amend." *Lewis v. AbbVie Inc.*, 152 F.4th 807, 816 (7th Cir. 2025) (quoting *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 520 (7th Cir. 2024)). This is plaintiff's first amended complaint. Despite having her claim dismissed, plaintiff failed to address the deficiencies from her first complaint in her amended complaint. Because plaintiff failed to cure the deficiencies in her first complaint and failed to "offer any meaningful indication of how [she] would plead differently," I dismiss the claim with prejudice. *Id.* (quoting *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012)).